The issue in this case, as I see it, is a legal one. I think it's fair to say that the parties generally agree on the factual sequence of events. But the issue is whether or not when Mr. Sullivan was transferred to a pre-release center, if his supervised release commenced at that time. In other words, whether or not that constituted a release from imprisonment as set forth in Section 3624E. And does the status depend on what it's treated as under Montana law or what federal law it would treat? You know, I think — I believe it would be federal law. And the reason — Now, when you say that, that means we can't look to what Montana considers that program to be? What I would caution the Court against that, because Montana in the Chandler case, the Montana Supreme Court clearly indicated that it was interpreting a term of art. And it acknowledged that interpreting this term, term of art, that was — it led to some anomalous results. For example, someone who is under State-supervised release is under official detention, whereas someone who's on furlough is not. So you're saying we can't look at Chandler? Because actually, in aid of your case, Chandler actually says the program is, quote, an alternative to imprisonment. We hear a lot of different words, but the key word involved here is imprisonment. So you're saying I can't look to Chandler saying that this is an alternative to imprisonment and, therefore, something other than imprisonment, and, therefore, you win? No. Look at the good parts of Chandler, not the bad parts, I guess is what I'm saying. Yeah. I — it was just beautiful. I thought it helped you, and I was surprised that you didn't just sort of jump on it with both feet. Well, in — and Chandler does use that kind of language. I guess — Well, why isn't it a question of State law? I mean, because, remember, he is released from State prison. What constitutes release from prison is, after all, a State question. Because the triggering event for the federal — for the taking of federal probation is a State event. So you quickly said it's federal law or the State law. But are you sure it's federal law, not State law? See, we gave you time to think about this. We really expect you to sort of think about it. You got our order saying think about it? Should I think about it? You did get an order calling attention to the case, right? I did, yes, sir. And I read the case as well as the cases leading up to it. Why isn't it a State question or State law? I don't — I mean, if Chandler governs, that's great. I don't know. Standing there saying, I want to win, is not going to win it for you. I'm sorry? Just standing there saying, I want to win. I know, yes. I know that. But what I'm saying is, is I think that the Court needs to ultimately interpret the language of release from imprisonment as it's used in the federal statute. Chandler says it's an alternative to imprisonment. And that would seem to indicate that the Montana Supreme Court does not at least consider the halfway house situation to be imprisonment. Where I would not rely on Chandler is to the extent that Chandler states that when he was in the pre-release center, he was under official detention and tried to extrapolate from that into federal law that he was — that he had, in fact, been imprisoned. And so that's what I'm saying. I think — I do believe, ultimately, that the Court has to interpret the federal statute. The Court can, of course, rely on State — What does the federal statute say? The State — the federal statute says the supervised release begins on the day the person is released from imprisonment. And so is your argument, and if it is, why, that you look to a federal interpretation of that rather than how it is interpreted State by State for some notion of uniformity in federal interpretation of a federal statute? Are you suggesting it would be impractical or some problem of — if a State — let's say the Montana Supreme Court had not used that felicitous phrase for you and had simply said it is detention and it's an alternate form of detention, so we would be a little unclear or we would be inclined to interpret it as the functional equivalent of imprisonment, what would be the argument, then, to say that federal uniformity would override Montana's decision to treat that as imprisonment? Well, I think if the Court were — and I guess the way I was looking at Chandler was I was looking at the official detention language in there. And looking to some of the other cases like Reno v. Corey that kind of talk a little bit about what official detention means. Well, I'm trying to get you to — let me just make it cleaner. Let's just assume Montana says, even though in a federal sense that would not be imprisonment, in Montana, even though the conditions of the halfway house are identical to what Idaho would call not imprisonment, both states are clear. Idaho says it's not and Montana says it is. Okay? So you're arguing that, what, in any event, it doesn't make any difference, it's what federal law would consider a halfway house to be, whether or not it's imprisonment? In all candor, yes. I think — And why? Why would you do — that's what I was trying to find out. What's the argument for federal uniformity? Well, the argument for federal uniformity, one is the uniformity argument itself, but also in interpreting federal law, in interpreting law, the federal courts, certainly in the constitutional arena, for example, I'm thinking of like the Fourth Amendment arena or something like that, where the federal courts will apply their own law and not apply the law that's of the State. Well, but it depends on what the federal law says. If the federal law points to something else — I mean, what if Montana has a work fellow program where you're released from prison every morning and you go into community work and you're expected to come back by a certain hour at night? So you spend your nights in prison, but during the day you're free. And the Montana law or the state law says, even though you're out in the community and even though you're working and even though you don't have shackles, you are considered to be in prison. Okay? And if you leave any of the authorized places — you know, you're allowed to go certain — you know, to the bathroom, to eat, you're given a certain list of things you can go, but if you leave one of those places, it's like a prison break. It could do that, right? And I believe most states that have work fellow programs or weekend fellow programs, in fact, do it exactly that way. Federal law would not say, well, no, we see him out in the community and therefore we think he's been released for the weekend. We wouldn't say that. We'd look at what the state does. And it's not that walls don't make a prison, right, necessarily. No, it's not necessarily the walls that would constitute imprisonment. That I would agree with. You know, maybe you'd better save the rest of your time for rebuttal. Thank you. Mr. Wolf, you're back. Your Honor, having looked at this after your order, it's the position of the United States that it is a state law question and that the states are free to differ on what they're going to call imprisonment and the example of Idaho and Montana being different. My reading of the Chandler case, however, is that they were presented with, is this a community corrections facility or is it a supervised release program or is it some type of parole? Well, it's easy to rule out parole and they rule out that it's supervised release because they hold that it's a community corrections facility under Montana law. But they also say it's an alternative to imprisonment. Now, that's the magic word. Maybe imprisonment means something different in Montana than it does in the halls of the United States Congress, but I think we can assume they mean the same thing. And when they say alternative to imprisonment and the guideline language we're looking at says imprisonment, it seems to me that what's going on in Montana is not imprisonment. Well, I think something can be an alternative to imprisonment and that's not to be equated with it being not imprisonment for purposes of a federal statute. It can be imprisonment when it's an alternative to imprisonment? The key language from 3624E, it begins by saying that when your term is up, the Bureau of Prisons has to release you. Very next sentence. The term of supervised release commences on the day the person is released from imprisonment and we can assume that they're talking about both state and federal, although the preceding sentence is talking about Bureau of Prisons release. But it then says, and runs concurrently with any federal, state, or local term of one, probation, supervised release, or parole. Okay? The pre-release center is not supervised release. That's Chandler. It is not parole. And it's not probation. There's no probation in Montana. So it's not any of the three things the statute says that a person is supervised. Which statute? 3624E. That pre-release center is not any of the three things that Congress has said. Federal law? 3624E? Correct. But you said it's a state law question. Whether it is one of those things is a state law question. And we know from Montana law that it's not one of those three things. So the only remaining argument for the defendant is even though this isn't parole, even though this isn't probation, even though this isn't supervised release, it's still a release from imprisonment. And there's one little snippet of Chandler that says it's an alternative. And I would concede that the guidelines speak of community confinement as an alternative or as supervised release. But Montana treats it as imprisonment. He was serving out a 10-year term of imprisonment when he was at that pre-release center. He was not on parole. So are you arguing backwards in effect from what they list as probation, supervised release, or parole, that anything other than those are automatically imprisonment? That the federal statute itself has defined imprisonment as only non-imprisonment, in other words, would have to be supervised release, parole, or probation. Is that your argument? I think unless he is just walking around No, that's not my question. He's in a halfway house. He's in community confinement. As you say, it's not supervised release, it's not probation, and it's not parole. They don't call it that. It's not designated that. It's community confinement. It's a halfway house. It doesn't fit within any of those other three labels. You're saying as long as it doesn't fit within probation, supervised release, or parole, it is by definition still imprisonment. Yes, but I would add to that because Chandler says No, no, we're not interpreting Chandler. I understand what you'd be saying is that we look to the federal statute, and the federal statute defines by application imprisonment to be anything other than those three items. It doesn't make any difference as long as Montana doesn't treat it as supervised release, probation, or parole. I think that's right. So where are those three terms? Where in 3624? I'm sorry, where in 3624 are you signing? I'm on subsection E and the very first sentence is Subsection what? Subprovision E. As in Edgar? As in Edgar, yes. And the first sentence is about when the Bureau of Prisons releases you. The second sentence then begins the term of supervised release commences on the day the person is released from imprisonment. And it could very well be that Congress when they wrote that sentence is thinking about release from the Bureau of Prisons and they're not thinking about states, but you know you could read it either way. Are you still quoting? Excuse me? Are you still quoting? Are you still answering my question? That was an unquoted parenthetical of mine. Let's skip those. Let's just answer my question. Okay, on the day the person is released from imprisonment and runs concurrently with any federal state or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during a term of supervised release. And we know I'm sorry, how does that help you? Because the pre-release center in Butte, Montana is none of those things. Right, so it doesn't run concurrently with that. I mean that sentence that phrase tells us with what state things the federal the federal supervised release should be run concurrently with, right? Correct. And he's not claiming that he gets time on his supervised release for time he spent in the pretrial detention center. He is claiming that. That's the whole core of his argument. When I'm at the Butte pre-release center, my supervised release clock is ticking and it's all ticked up. That's his argument. I thought his argument was that he was released at that point. That is that's really kind of absurd because he wasn't released at all. He had to report and if he runs away, they come with guns to get him. Well, let me ask you this then. If this were a federal release to a halfway house, under federal law, would that be a release from imprisonment? I believe it would be. Even though it doesn't come within probation, supervised release, or parole? It does come under supervised release. That is 5C1 of the guidelines and 5F1. Under those guidelines, when you impose a split sentence, you get 12 months imprisonment, but the guidelines then say you can do a split sentence under 5C1 because you're low level and not very dangerous. The way the guidelines set it up is that the second half of your imprisonment will be treated as a condition of your supervised release. Okay, so it does then under federal law, what he got would be considered supervised release. It would be part of his supervised release. Yes. And would run concurrently in all of that. Correct. I looked this up just this morning. Montana used to have a supervised release program where you would contract with a sponsor before you were ever paroled. It was repealed in 1997. There is no question that the pre-release center was not supervised release because supervised release under Montana law, at least the previous program, was gone. And I think Chandler's pretty clear that between a box of community correctional facility and supervised release, they put it in the community corrections facility box. Mr. Wolf, I have a slightly different question. Much of this entire dispute arises from the fact that the federal government was unaware when the defendant was released from state prison. The briefs are kind of unclear as to how that happened, but that happened. I'm wondering if the solution here isn't to find that he violated his federal supervised release the moment he didn't report. And I'm wondering why the government doesn't hang its hat on that argument rather than smoke and marijuana at the end of his supervised release. Why not argue he violated his supervised release the moment he didn't report, and is it merely the government trying to get a higher penalty, or what is the reason behind this? I wish it were something that creative, Your Honor. If we could rewrite these briefs today, sort of given all the new information and new arguments that have come along even through the reply brief and then Chandler and whatever, we'd do it very differently. My research of this circuit's law is failing to report for supervised release doesn't stop the clock. You only stop the clock if probation goes out and gets a bench warrant. At that point, your supervised release... They have to violate him. They have to violate him. Right, and not reporting would be a violation. Right, but they have to violate him. They have to go in to the district judge and say pull his supervised release because he didn't report. That's right. And they didn't do that. It's too late. Yeah, they didn't know. Well, no, I'm not putting any blame. The fact is they didn't do it. It's very disturbing and we've tried to figure out exactly what happened and basically... But, Mr. Wolf, I wasn't arguing that that would somehow toll. I was just arguing that that could now be the hat, the item you hang your hat on to claim a violation. This is all about a violation. Rather than claim marijuana was the violation, why don't you claim the violation was the original failure to report? And perhaps the answer is some sort of statute. Well, I think the answer is if you accept his arguments about the pre-release center, the clock is run. Like, finding a new violation on him doesn't help because the clock is run. You petition to revoke him too late. I think that's the answer no matter what the argument is. Are there no further questions? That's the problem, isn't it? Okay, thank you. I think, Your Honor, I would just sum up. You're going to not take my advice either, right? You're going to try to move something around as well. Go ahead. Why don't you direct your rebuttal to rebutting the interesting analysis of subsection E? I think that what government counsel is kind of mixing apples and oranges there. That other clause of subsection E, I don't think is intended to modify in any way what release from imprisonment means. It means just it's referring, I think you've read in context, just to me, that supervised release will run concurrently with any other parole or probation or anything of that nature. I don't think that you can take that clause to say, well, you have to be released on probation or parole or something in order to establish you are, in fact, released from imprisonment. I just, I don't think that's correct reading of the statute. If there are no further questions.  Cases are yours to answer, ma'am.
judges: Kozinski, Fisher, Guilford